IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SEARS ROEBUCK AND CO., )
 )
                              Plaintiff, )
Vs. ) No. 08-4125-SAC
 )
IPofA SALINA CENTRAL MALL, L.L.C., )
 )
                             Defendant )
_____)
 )
WACHOVIA BANK, NATIONAL )
ASSOCIATION, )
 )
               Third-Party Plaintiff )
 )
Vs. )
 )
EDWARD H. OKUN, *ET AL.*, )
 )
             Third-Party Defendants )
_____)

MEMORANDUM AND ORDER

The case comes before the court on the following motions: a motion for removal of receiver (Dk. 114) filed by Boardwalk Management Company, Inc. ("Boardwalk"); a motion for enforcement of the amended consent order appointing receiver (Dk. 118) filed by the Receiver, Michael Kalil, ("Receiver"); motion for order directing receiver to pay judgment (Dk. 122) filed by Boardwalk; and motion to determine priority (Dk. 123) filed by

Boardwalk. On December 8, 2009, counsel for Boardwalk, the Receiver, and Wachovia Bank, National Association ("Wachovia") argued their positions to the court both by telephone and in person at a hearing in chambers. With the filing of Wachovia's response (Dk. 130) to Boardwalk's latter two motions and the most recent filing of Boardwalk's reply (Dk. 134), the court is ready to rule.

Any complexity in the argued issues is due to the protracted procedural history in this case. Because the parties have not disputed that history and because the issues are otherwise unremarkable as legal precedent, the court will forego laying out a detailed factual framework and decide the issues after a very brief summary of the parties' positions and arguments.

In its motions, Boardwalk challenges the Receiver's refusal to pay Boardwalk's judgment granted against IP of A Salina Central Mall, L.L.C. ("IPoA") in the District Court of Saline County, Kansas, on September 21, 2009, for $167,732.65 and the final judgment of $182,536.88 on October 7, 2009. This judgment is on Boardwalk's claim for management services performed for IPoA prior to the federal court's appointment of the Receiver for IPoA. This claim was for an annual

2

management incentive bonus of $145,594.20, a contract termination fee of $14,583.33, and other expenses, commissions and fees. On Boardwalk's motion, the Saline County district court issued on November 4, 2009, an order of special execution for seizure of all of IPoA's personal property. On the morning of November 16, 2009, attorneys for the Receiver and Wachovia learned of the Saline County Sheriff's plan to levy and execute this order that day on IPoA's personal property at the Mall now possessed and controlled by the Receiver. After first attempting to contact Boardwalk's attorney, the attorneys for the Receiver and Wachovia secured an *ex parte* federal court order that enjoined Boardwalk immediately from "any attempt to garnish any rents or from having the Sheriff seize any personal property in the possession of the Receiver that is subject to Wachovia's pending foreclosure action or from otherwise acting in contravention of the terms of the Receiver Order." (Dk. 113). Because of the *ex parte* character of its order, the court promptly set down a hearing date and added two of the four now pending motions for argument.

On December 8, 2009, the court entertained argument on all four pending motions. Boardwalk described how it had served as the Mall

manager for IPoA and how Wachovia pursuant to the Forbearance Agreement had approved and paid all of Boardwalk's applications for expenses, fees and commissions except for the last one submitted just before the Receiver's appointment.  Boardwalk said Wachovia gave no reason for denying this last application.  Boardwalk complains that the Receiver never recognized its claim before or after the state court judgment and never reported it as a liability.  Boardwalk notes that the Receiver has paid all other creditors.  Boardwalk accuses the Receiver of not meeting its obligation to pay all liens as set forth in the order appointing him.  Boardwalk pleads for equity asking the court to order payment because Wachovia benefitted from its successful management of the Mall and took the additional rents without compensating Boardwalk pursuant to the Forbearance Agreement and the Collateral Assignment of Leases and Rents.

The Receiver defended its refusal to pay Boardwalk's claim and later judgment by the terms of the receivership order.  Paragraph (o) of that order provides in relevant part:

> the Receiver is authorized to: . . . 3) pay all utilities, expenses and other obligations secured by, or which may give rise to, Liens, and all other outstanding obligations to suppliers and services in the ordinary course of business, including, with Approval, obligations incurred

4

> prior to the commencement of the receivership so long as the Receiver has determined that it is prudent to do so in order to maintain business relationships that are beneficial to the conduct of the receivership; . . . .

(Dk. 34, p. 5). In the exercise of this conferred discretion, the Receiver says he has determined that it is not prudent to pay Boardwalk's claim, as Boardwalk is simply a creditor that has no continuing business relationship with IPoA or the Mall that is beneficial to the Receiver's operation of the Mall. Without this determination by the Receiver and without the approval of Wachovia, Boardwalk may not obtain payment under the terms of the receivership order. The Receiver observes that no interested party has asked for a claims process to be set up and this is probably due to the expectation that there will be no excess proceeds from the foreclosure sale.

Wachovia notes that Boardwalk is mistaken in saying it is the only unpaid creditor of IPoA, as Wachovia has an unpaid $33 million judgment of foreclosure. Wachovia characterizes Boardwalk's request for payment as a junior creditor attempting to be paid from a senior creditor's secured collateral.

Boardwalk has not come forward with any tenable argument in favor of the Receiver's removal. The Receiver's authority for paying pre-

receivership obligations of IPoA is spelled out in the order appointing him. He is authorized to pay them "with Approval" if he first determines "that it is prudent to do so to maintain business relationships that are beneficial to the conduct of the receivership." (Dk. 34, p. 5). The Receiver has articulated why any payment of this pre-receivership obligation is not prudent in its judgment. Boardwalk has no current business relationship with the Receiver's operation of the Mall. It does not provide any goods or services necessary to maintain or operate the property under the control of the Receiver. The payment of this claim would not maintain any existing business relationship beneficial to the Receiver. There is no proof of the Receiver having violated the terms of this provision in paying other creditors. Boardwalk offers that the Receiver could have avoided some additional legal expenses by paying Boardwalk's claim. The logic of this reason escapes the court for it would then be prudent for a receiver to pay any creditor simply to avoid litigation expenses. Moreover, under the terms of the receivership order, this reason still would not authorize the Receiver to pay Boardwalk. Finally, the Receiver rightly refused payment to Boardwalk as the approval required under the order was never given by Wachovia nor obtained from the Court.

Boardwalk generally denies that its claim should be denied pursuant to the terms of the receivership order which was entered before Boardwalk even became a party to this action.  Boardwalk complains of the inequity of having its claims denied on terms of which it never was given an opportunity to challenge.  Boardwalk infers the court's order was not intended to yield the court's authority to decide pre-receivership claims to the Receiver.  Boardwalk asks for its claim to be paid according to the ordinary course of business established in the fourteen months prior to the receivership.

In the spirit of arguments loosely fashioned around ambiguous notions of equity, Boardwalk offers no legal precedent for its position.  The court would note that upon becoming a party to this action, Boardwalk had every legal right to challenge by appropriate motion any prior order that impaired its legal position.  Having slept on its right to do so, Boardwalk is hardly in a position to be asking for equity now.  The court regards the receivership order as reasonably fashioned to guide the receiver in the ongoing operations of the Mall.  Granted, there was no express procedure established for claims to be filed with the receiver by creditors who did not have any ongoing business relationship with the operations of the Mall.

Still, Wachovia's foreclosure action certainly offered such creditors the opportunity to assert their claims against IPoA and to have their priority determined in this court.

This is what happened here. Boardwalk filed its answer admitting the allegations in ¶¶ 37, 38 and 39 of Wachovia's first amended cross-complaint and third party complaint. (Dk. 56, p. 13). In doing so, Boardwalk admitted that Wachovia by right of a security instrument could foreclose on the Mall and other property that was the subject of the mortgage, that Wachovia's lien "was the first and best lien on the Mall and other property subject to" Wachovia's security interest[1], and that as a third-party defendant it did not have "a superior lien or security interest to that of" Wachovia. *Id.* Boardwalk later responded to Wachovia's motion for summary judgment reiterating its admissions in this answer. (Dk. 99, at p. 2). In the agreed order of judgment of foreclosure which was submitted and approved by Boardwalk's counsel, Boardwalk's judgment lien was found to be "junior and subordinate to the lien of Wachovia," and it was

---

[1] Wachovia's security instrument included a mortgage that was attached as an exhibit to Wachovia's original complaint. It defined the mortgaged property as including in relevant part, "[a]ll tangible and intangible personal property now owened or at any time hereafter acquired by Borrower (IPoA) of every nature."

8

ordered that "[t]he personal property subject to the Mortgage shall be subject to the sale as a combined sale with the Property." (Dk. 112, ¶¶ 3 and 9).[2] Based on Boardwalk's admissions in its answer and other filings, the court finds as a matter of law that its judgment lien is junior to Wachovia's secured interest in all of IPoA's property defined in the security instruments, even the personal property. Equity has not been compromised here, for Boardwalk has received a full and fair opportunity to litigate and to have its claim for payment against IPoA determined by the court.

Besides Boardwalk's own admissions on the inferior priority of its lien, the Kansas case law cite by Wachovia convincingly establishes that Boardwalk never secured a judgment lien against IPoA's personal property subject to the receivership. By the terms of the receivership order, IPoA and all its agents, including the current management (Boardwalk), were required to deliver to the Receiver immediate possession of IPoA's real and personal property subject to Wachovia's security interest and were "enjoined from in any manner disturbing the Receiver's possession of" this

---

[2]The court appreciates that this agreed order defines "property" as real property and improvements and that the finding of Boardwalk's lien being junior was limited to this property.

same property. (Dk. 34, ¶¶ (d) and (e)). Boardwalk's attempt to levy upon its judgment in November of 2009 not only violated these provisions of receivership order but was contrary to Kansas case law. The receiver possesses the property exclusively but subject to all liens and priorities existing before the receiver's appointment. *Cramer v. Iler*, 63 Kan. 579, 66 Pac. 617, 618 (1901). Following the receiver's appointment, no liens can be obtained or enforced against receivership property except upon order of the court appointing the receiver. *Id*. The general rule is:

> that liens are not lost or affected by the appointment of a receiver; that he merely holds the property intact until the relative reights of parties can be determined; and that when the property rightfully passes into the custody of the law it is not subject to execution or interference without permission of the court, and any attempt to seize or sell it by a third party without permission would be a contempt of the court having it in custody.

*Id.* Twenty-five years later, the Kansas Supreme Court held that property the subject of a receivership "is not subject to seizure by attachment or garnishment process issued from another court." *Fleeger v. Swift*, 122 Kan. 6, 251 Pac. 187, 188 (1926). Thus, Boardwalk's judgment could not attach to the Receiver's property without the permission of this court, and this was never obtained.

Boardwalk first pejoratively describes this as "century old case

law." (Dk. 134, p. 2). Though *Cramer* is hoary precedent, the Kansas Supreme Court summarized these same propositions from *Cramer* in 1962 as the "well-established rule of law." *Cates v. Musgrove Petroleum Corp*. 190 Kan. 609, 376 P.2d 819 (1962). In the absence of more recent precedent contradicting these propositions, Boardwalk's position is not sustainable.

Boardwalk next "asserts that the provisions of K.S.A. 60-706 clearly conflict with and nullify such case law and clearly provide that the attachment of personal property is complete upon levy by the sheriff and that the sheriff is not required to take personal property into his possession in order for the lien to attach." (Dk. 134, p. 2). The court fails to see how the attachment procedures set forth in this statute clearly conflict with the above case law. The statute requires the sheriff to either take possession of the personal property if reasonable to do so or declare that the property is being attached and summon the person in possession by serving a copy of the order of attachment. K.S.A. 60-706(b)(3); *see Carson v. Chevron Chemical Co.,* 6 Kan. App. 2d 776, 792, 635 P.2d 1248, 1260 (Kan. App. 1981) ("[A] judgment does not act as a lien on personal property unless and until levy is made. *In re Wilson*, 390 F. Supp. 1121 (D. Kan. 1975)").

Boardwalk has not shown that the sheriff attached any personal property on November 16th. The statute makes no mention of property that is subject to a receivership. Consequently, even if the sheriff attempted to serve an order of attachment on November 16th, Kansas case law holds the state court order would have no effect upon this personal property in the receivership ordered by this federal court. In sum, Boardwalk does not have a judgment lien on the personal property, and there is no dispute over priorities to be decided.

The court is not persuaded by any of Boardwalk's pleas for equity. As for how Wachovia may have benefitted from Boardwalk's management in 2008 but then refused to approve Boardwalk's application in 2009 just before the receivership, the court does not regard these as uncommon circumstances that befall service providers of failing businesses. In most of these instances, a junior creditor would be able to assert that the provided goods or services had enhanced the value of what must still be regarded as the senior creditor's collateral. And yet, as a matter of equity, senior creditors generally are not required to have their collateral depleted in order that the junior creditor be made whole. The court would have to think that Boardwalk certainly enjoyed a position in

12

2008 for securing its future payment of bonuses and fees and would have considered doing so in light of IPoA's financial predicament. As for any legal merits to Boardwalk's arguments based on the relationships and understandings established through the operation of the Forbearance Agreement or the Assignment of Leases and Rents, the court has no cause for deciding them here, since Boardwalk has not filed any actionable claim against Wachovia on those theories. In sum, the court finds nothing inequitable in this case that would justify depleting the receivership that is the senior creditor's security in order to benefit an unsecured junior creditor.

The one remaining motion is the Receiver's demand to have the receivership order enforced against Boardwalk. At oral argument on December 8th, counsel for Boardwalk agreed that it would not pursue any further attempts at seizing personal property of the receivership and that it would withdraw all garnishments. On December 14, 2009, Boardwalk filed a notice showing it had complied with the representation and had withdrawn the order of garnishments issued for tenants of the Mall, including those that had never been served. (Dk. 133).

At the hearing, it appeared that the Receiver and Wachovia

13

were satisfied by these concessions from Boardwalk's counsel. Even so, the Receiver's original motion sought a finding of contempt against Boardwalk and its attorney and prayed for reimbursement of Receiver's fees and costs incurred on this motion and all related matters. Applying a plain reading of the previously discussed Kansas case law shows Boardwalk acted in contempt when it attempted to attach its state court judgment against personal property held in receivership without first obtaining the federal court's permission. To assuage the court of its good faith, Boardwalk points to its full compliance with the applicable Kansas statutes including the notice requirement to the Receiver and explains that the Receiver should have anticipated Boardwalk's intentions and additional collection efforts from having participated in the state court proceedings. The lack of an express claim procedure for pre-receivership creditors could be considered another mitigating circumstance. These circumstances along with Boardwalk's recent concessions to forego additional collection efforts and to withdraw the garnishments weigh against ordering the reimbursement of the Receiver's fees and costs. The court denies that request.

IT IS THEREFORE ORDERED that Boardwalk is denied all

relief sought in its motion for removal of receiver (Dk. 114), motion for order directing receiver to pay judgment (Dk. 122), and motion to determine priority (Dk. 123);

IT IS FURTHER ORDERED that the Receiver's motion for enforcement of the amended consent order appointing it (Dk. 118) is denied as moot because of Boardwalk's recent concessions at the hearing on December 8th and the Receiver shall not be reimbursed for its requested fees and costs.

Dated this 17th day of December, 2009, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge